Cletus H. J. Jollie v. Commissioner.
Cletus H. Jollie v. Commissioner
Docket No. 25396.
United States Tax Court
1951 Tax Ct. Memo LEXIS 68; 10 T.C.M. (CCH) 985; T.C.M. (RIA) 51304; October 19, 1951
*68 Held, housing units sold by petitioner in 1946 were property held by the taxpayer primarily for sale to customers in the ordinary course of trade or business, and not property held for investment or used in the trade or business, as defined in section 117 (j) (1), I.R.C.
Lauren M. Wright, Esq., and George F. Elmendorf, Esq., for the petitioner. T. M. Mather, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined an income tax deficiency of $48,415.97 for the year 1946. The sole issue is whether houses sold for profit during the year were property used in a trade or business as defined by section 117 (j) (1) of the Internal Revenue Code, or whether the property was held by the taxpayer primarily for sale to customers *69 in the ordinary course of trade or business. Findings of Fact The facts stipulated are so found. Cletus H. J. Jollie, the petitioner, is a resident of Los Angeles, California, whose income tax return for 1946 was filed with the collector of internal revenue for the sixth district of California. In 1940 Jollie entered the real estate mortgage brokerage business and has been licensed ever since as a real estate broker. Early in 1944 the petitioner entered a co-partnership called the Frederich Fischer Construction Company, which built and sold approximately 110 single family houses in southwest Los Angeles. One of these dwellings was rented by the partnership and later sold to Jollie in September, 1945, as rental property. Jollie continued renting the house until he sold it in October, 1946. In April of 1944 Jollie entered into a contract with Hamilton Homes, Inc. to purchase certain housing units constructed by that corporation in the northeastern section of Los Angeles. The Hamilton Company constructed 236 units and Jollie bought 16 single family residences and 15 two-family houses. The 16 single family houses were sold shortly after completion in 1944 by the Hamilton Company *70 for Jollie but he took title to the 15 two-family units in December, 1944. These duplex properties were rented by the Hamilton Company for the petitioner under a written month to month lease. They remained rented for periods of 13 to 27 months. The Hamilton duplexes were war housing units, constructed under Title VI of the National Housing Act. General Orders 60-2 and 60-3B of the National Housing Agency restricted the right to sell these duplex dwellings except to certain persons under specified conditions. Jollie acquired the duplex units subject to these restrictions. In May, 1945, Jollie entered into a partnership known as the Loyola Village Construction Company which built and sold approximately 186 single family houses in the southwest section of Los Angeles from 1945 through 1948. The Fischer and Loyola Village developments were not subject to the sale restrictions applicable to the Hamilton duplex units. Frederich Fischer, the petitioner's partner in both the Loyola and Fischer ventures, died in September, 1946. On October 15, 1945, the restrictions upon the disposition of the duplex units were repealed. In November and December of 1945, Jollie agreed to sell two of *71 the duplexes. They were subsequently sold in 1946. The remaining two-family houses were sold individually in the latter half of 1946, four being sold between September 17th and October 28th for $53,900. In 1946 the Loyola Company was in need of fund to complete constructions, and Jollie advanced money to it, beginning in March but principally during the last five months of the year. Some repayments of these advancements were made by the Loyola Company during 1946. Between September 20 and October 26, 1946, $15,000 was advanced by Jollie and he received $39,480.11 in repayment. On March 19, 1946, Jollie offered to sell the remaining 13 duplexes he then owned. This offer was later withdrawn, but in July, August and September Jollie again offered the duplexes for sale. Since May, 1948, Jollie has been engaged in constructing houses for sale as a sole proprietor. The petitioner reported the gain from the sale of the 15 duplexes and the one rented single family unit as a long-term capital gain of $56,647.24 in 1946. Net income from rental receipts for 1945 and 1946 was less than $5,000 in each year. Partnership income in 1946 totaled $30,884.03. The respondent determined that the 15 duplexes *72 and the one single family unit were held primarily for sale to customers in the ordinary course of trade or business of the petitioner's business and treated the profit as ordinary income. Opinion VAN FOSSAN, Judge: The only question presented is whether the profits derived from the sale of the 15 duplex housing units and the one single family house are taxable as ordinary income or as capital gain. The issue is one of fact. Jollie contends that the 15 two-family units were property held for investment or used in his trade or business as defined in section 117 (j) (1) of the Internal Revenue Code[1] and that the gains realized from the sales of the houses were long-term capital gains. To support this argument the petitioner declares that in 1946 he was engaged in two separate businesses. There is no question that Jollie has been continuously engaged in the business of building and selling houses since 1944 either as a partner or by himself. The petitioner's additional occupation is stated as the business of acquiring and holding real estate for rental income and investment. To qualify for treatment under section 117 (j) (1), real property must be used in *73 the taxpayer's trade or business and held for more than six months but not primarily for sale to customers in the ordinary course of trade or business. If the housing units were held in Jollie's business of building and selling houses they were obviously held primarily for sale to customers in the ordinary course of that business, and respondent should prevail. If, on the other hand, these units were held in connection with the business of owning and holding real estate for investment and rental income purposes, petitioner should be affirmed. As reflected in the amounts reported as income from the sale of property, whether partnership or individually owned, and the income from rental receipts, there is no doubt that Jollie's principal business was selling houses, not investing in property for rental income. *74 We have said that the question is one of fact. The several tests to be applied have been set forth in many cases and need not be detailed here. The most recent case is Albert Winnick, 17 T.C. - (September 28, 1951). After applying these tests and bearing in mind that the ultimate question is not the purpose for which the property was acquired but is the purpose for which it was held at or before the sale, we have come to the conclusion that, on the record in this case, respondent correctly held that the properties in question were held primarily for sale in the ordinary course of petitioner's business in selling houses; that the rental of such houses was an ad interim incident and that the properties at the time of sale were not held as investments for rental purposes. See Rollingwood Corporation v. Commissioner, 190 Fed. (2d) 263, affirming a Memorandum Opinion of this Court [9 TCM 597]; Richards v. Commissioner, 81 Fed. (2d) 369, affirming 30 B.T.A. 1131. Decision will be entered for the respondent. Footnotes
1. Sec. 117. CAPITAL GAINS AND LOSSES. * * *
(j) Gains and Losses from Involuntary Conversion and from the Sale or Exchange of Certain Property Used in the Trade or Business. - (1) Definition of Property Used in the Trade or Business. - For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not * * * (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. * * *↩